(112 So. 447)

## POOLE et al. v. GRIFFITH et al. (8 Div. 945.)

Supreme Court of Alabama. March 24, 1927.

Rehearing Denied April 21, 1927.

**1. Tenancy in common** &#9880;3—**Where no division of cotton is made between farmers raising it, there is joint ownership, or "tenancy in common."**

Where farmers raise cotton by joint effort and no division is made between them, there is joint ownership, or "tenancy in common."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Tenancy in Common.]

**2. Judgment** &#9880;262—**Misjoinder of parties plaintiff in suit on official bond held properly raised by motion in arrest of judgment.**

Misjoinder of parties plaintiff in suit against sheriff and surety on official bond for failure to return attached property *held* properly raised by motion in arrest of judgment.

**3. Tenancy in common** &#9880;6, 55(3)—**Separate claims of exemption, interposed by joint owners of cotton, held not to work severance of joint interest, precluding joint action against sheriff and surety for failure to return attached property.**

Separate claims of exemption, interposed by joint owners of cotton which had been attached, *held* not to work severance of joint interest, but left owners tenants in common, where cotton had not been sold and rights of owners had not been separated, and hence did not preclude owners from maintaining joint action against sheriff and surety on official bond for failure to return attached property.

**4. Courts** &#9880;100(1)—**Decision overruling prior decision held to destroy authority of argument on which former decision was based.**

Decision overruling holding of prior decision *held* to destroy authority and reason as argument on which former decision was based.

**5. Exemptions** &#9880;119(2)—**Owners of attached property may claim exemption any time before sale.**

Claim of exemptions may be interposed by owners of attached property at any time before sale.

---

&#9880;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Sheriffs and constables** ⊚⟂157(4)**—Sheriff and surety on official bond held liable for failure to return attached property to owners claiming exemption, notwithstanding subsequent nunc pro tunc judgment ordering sale (Code 1923, §§ 7890–7892, 7894–7898).**

Sheriff and surety on official bond *held* liable for failure to return attached property to owners on demand after claim of exemption under Code 1923, §§ 7890–7892, 7894–7896, and both parties failed to give bond under sections 7897, 7898, notwithstanding subsequent judgment nunc pro tunc ordering sale of attached property, since such judgment operated from date of rendition of original judgment and was conclusive only as to parties and issues therefore presented.

**7. Judgment** ⊚⟂273(7)**—Judgment nunc pro tunc operates from date of original judgment.**

Judgment nunc pro tunc operates retrospectively to date of rendition of original judgment.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Action by Matt Griffith and another against C. Ernest Poole and another. From a judgment for plaintiffs, defendants appeal. Transferred from Court of Appeals under Code 1923, § 7326. Affirmed.

Eyster & Eyster, Wade Wright, and Tennis Tidwell, all of Albany, for appellants.

There was a misjoinder of parties plaintiff which is fatal to a recovery; and such misjoinder is available on demurrer, motion in arrest of judgment, or by appeal. Giovanni v. Bank, 51 Ala. 176; Id., 55 Ala. 305, 28 Am. Rep. 723; Brookside v. McAllister, 196 Ala. 110, 72 So. 18; Bell v. Allen, 53 Ala. 125; Patton v. Crow, 26 Ala. 426; 1 C. J. 1094; 20 R. C. L. 675. The amendment of the judgment nunc pro tunc related back to the date of the original judgment. Nabers v. Meredith, 67 Ala. 333; 34 C. J. 81. The judgment condemning the cotton under Bradley's attachment was prior to the filing by plaintiffs of their respective claims. These claims came too late, and it was the sheriff's duty to disregard them. Sherry v. Brown, 66 Ala. 51; Stanley v. Ehrman, 83 Ala. 215, 3 So. 527; Hill v. Hooper, 21 Ala. App. 584, 110 So. 323; McBrayer v. Dillard, 49 Ala. 174.

Ben L. Britnell and G. O. Chenault, of Albany, and S. A. Lynne, of Decatur, for appellees.

Plaintiffs jointly owned the cotton, and properly sued jointly in this case. Reeves v. Reeves, 207 Ala. 362, 92 So. 551; Dicey on Parties .(2d Ed.) 401; Brookside-Pratt v. McAllister, 196 Ala. 112, 72 So. 18; 38 Cyc. 121. Failure of the sheriff to perform his duty under the statute rendered him liable in this action. Code 1923, § 7898; Williams v. Ragan, 153 Ala. 397, 45 So. 185.

THOMAS, J. The case was submitted to the court on an agreed statement of facts. The question of misjoinder of actions and parties, and the right of elimination thereof, by amendment, need not be again restated. Wright v. McCord, 205 Ala. 122, 88 So. 150.

The following facts are shown by recitals and exhibits: On October 23, 1924, one Bradley began suit on a promissory note in the county court against W. G. and Matt Griffith; in aid thereof there was an attachment against Matt Griffith levied on four bales of cotton, amended at trial, so as to make same against "both of said defendants"; the cotton was replevied by Matt Griffith and delivered to him; by an agreement of the parties, one-half of the cotton was delivered to a third party (A. L. George) having a one-half interest therein; the suit proceeded to judgment of date of January 28, 1925, against the Griffiths (Matt and W. G.); and the bales of cotton weighing, respectively, 595 and 654 pounds were involved after the release of the two bales of 645 and 597 pounds to said George. After said judgment the two remaining bales of cotton were duly surrendered to the sheriff on February 21, 1925, and the respective claims of exemption filed; that of W. G. Griffith of date of "21st day of February, 1926," meaning by context to be 1925, and will be so treated, claiming different articles of personal property, and "I also claim as exempt a one-half interest in one bale of cotton, weighing 654 pounds, and one-half interest in one bale of cotton weighing 595 pounds, said cotton being valued at 24 cents a pound. Said cotton is now in the hands of C. E. Poole, as sheriff of Morgan county, Ala., and is stored in Hughes & Tidwell's warehouse, Albany, Ala.; my half interest in said two bales of cotton being valued at about $150. This is all of the personal property owned by me of which I have any interest and which does not exceed $1,000 in value. This exemption is especially claimed against the suit of S. H. Bradley against this affiant and Matt Griffith, in the Morgan county court of Morgan county, Ala., and against the attachment levied on the said cotton."

The same clause was embraced in the claim of Matt Griffith, a different schedule of other personal property, half interest in the same lot of corn and mules; the same is dated the 21st day of February, 1925. The notice of the sheriff to the plaintiff in the judgment, S. H. Bradley, was that "Matt Griffith and W. G. Griffith have each filed with me this day his claim of exemption to his interest in two bales of cotton, which were levied upon under attachment in this case, which have been returned to me as sheriff under the terms of the replevy bond. This February 21, 1925"— and the return shows that it was "executed" on the same day. It is further shown that of date of February 28, 1925, said plaintiff Brad-

ley filed his contest of said exemptions, notice thereof given by the sheriff to "said W. G. Griffith and Matt Griffith," that said "claims so filed by the said S. H. Bradley have never been tried in said county court; that Matt Griffith and W. G. Griffith" did not execute a bond and take possession of said property as provided in section 7897 of the Code of 1923, within five days after receiving notices of said contest, and neither one of them made such bond; that said Bradley did not make the bond (section 7898, Code of 1923), "within five days" after the expiration of five days from the execution of said notice of contest, nor at any other time. It is further recited:

"After the expiration of ten days from and after the 10th day of March, 1925, when said notices of contest were served the said Matt and W. G. Griffith, both and each demanded of C. E. Poole, sheriff, the possession of said two bales of cotton remaining in his hands. Said cotton was at the time of such demand of the value of 24 cents per pound, and said sheriff failed and refused to deliver said cotton to said Matt Griffith and W. G. Griffith, or either of them, and continued to hold the same in his possession. Said cotton at that time weighing 595 pounds and 654 pounds. The two bales together weighing 1,249 pounds. On, to wit, the 12th day of March, 1925, the said Bradley filed his motion in said county court to amend said judgment nunc pro tunc."

The motion "to amend said judgment nunc pro tunc" was for the recited purpose as follows:

"The judgment rendered and entered in the foregoing cause in favor of the plaintiff and against the defendants, so as to adjudge by said judgment that plaintiff has a lien upon the following described property, to wit, one bale of lint cotton weighing 595 pounds and one bale of lint cotton weighing 654 pounds, which was levied upon under and by virtue of a writ of attachment issued out of the Morgan county court of Morgan county, Ala., by C. E. Poole, as sheriff of said county, in the above and foregoing cause, and so as to declare that plaintiff has a lien on said cotton, and so as to adjudge that said cotton so levied upon be condemned and ordered sold for the satisfaction of the judgment which the plaintiff obtained against the defendants in said cause, and so as to condemn said cotton for the satisfaction of said judgment and order the same sold for the payment and satisfaction of said judgment,"

—and as grounds thereof stating the facts as we have generally hereinabove indicated; and the judgment was entered on said motion as therein sought and prayed, and that order was:

"It is hereby considered, adjudged, and ordered that plaintiff's motion to amend the judgment in this cause nunc pro tunc be and the same is hereby granted, and the judgment in this cause is hereby amended so as to declare that plaintiff has a lien on said two bales of cotton, as aforesaid, and so as to condemn said two bales of cotton to the satisfaction of this judgment,

and so that the judgment in this cause will be in words and figures, and will read as follows,"

—reciting the words of the amended judgment to be entered by the clerk on the minutes of that court, and concludes with the direction to the sheriff as follows:

"It is further considered, adjudged, and ordered that the sheriff of Morgan county, Ala., be and he is hereby ordered to sell the said two bales of cotton under and by authority and by virtue of this judgment, as the law directs, and for the satisfaction and payment of this judgment."

It is further recited in the agreed statement of facts:

"On the 23d day of October, 1924, and all the time since then, C. Ernest Poole was sheriff of Morgan county, Ala., and the American Surety Company of New York was the surety on his official bond. The said C. Ernest Poole, as sheriff of Morgan county, Ala., had possession of said two bales of cotton, which had not been released from said attachment at the time said demand was made upon him by said Griffiths, and he has never delivered said cotton or either of said bales to Matt Griffith or W. G. Griffith or to any one for them."

The judgment was for the plaintiffs, and the motion "in arrest of the judgment" was then and there urged, "because there was a misjoinder of parties plaintiff in the cause in this, when the plaintiffs claimed a separate exemption in the cotton, the joint interest of the plaintiffs therein became thereby severed and plaintiffs were not entitled to maintain this suit jointly. The court overruled said motion on the day and date said motion was made, and the defendants then and there in open court duly reserved an exception to the action and ruling of the court in overruling said motion."

[1] If it may be inferred from the uncontroverted questions of fact that the appellees were farmers, had raised the two bales of cotton by joint effort, and no division had been made between them, a joint ownership or tenancy in common would have been shown. Reeves v. Reeves, 207 Ala. 362, 92 So. 551; Mullins v. Baker, 193 Ala. 594, 69 So. 516; Thompson v. Mawhinney & Smith, 17 Ala. 362, 52 Am. Dec. 176. However, the record is silent of their former or contractual relations to the property or cotton in which each claims "a one-half interest," and "my half interest in said two bales of cotton being valued at about $150."

In Hood v. Johnston, 210 Ala. 617, 99 So. 75, it is held as to the right of party plaintiff to recover for himself and tenants in common that:

"The rule, that a tenant in common as against a mere disseizor or stranger to title may recover the whole estate for the benefit of all, contemplates that all cotenants are entitled to recover and is inapplicable where the rights of some are barred by limitations. Tenants in common hold

by separate and distinct titles but by unity of possession, so that the disability of one will prevent the operation of the statute of limitations as to him, but not as to those not under any disability. A plaintiff cotenant claiming the whole estate may recover an undivided interest."

In Brookside-Pratt Mining Co. v. McAllister, 196 Ala. 110, 112, 72 So. 18, 19, the joinder of the parties plaintiff held that:

"Where the action is joint for injuries from overflow, plaintiffs cannot recover damages purely personal to each * * * alone, although both suffered like damages."

It is further said:

"Several parties cannot sue jointly for injuries to their respective persons. The principle underlying the rule is that it is not the act which injures one or both, but the consequence of the act, in the way of damages, that determines whether plaintiffs should joint or sever. One stroke or one word may injure two or more alike, in the person or in the feelings, yet their actions are separate and not joint. There can be no joint action in such cases because one cannot share the suffering or injury of the other. 1 Chit. p. 64. If there be an improper joinder in such cases, advantage may be taken thereof by appeal or writ of error, whether the matter appear in the pleading or not." Dicey on Parties to Action (2d Ed.) 401; Macher v. Farmers' & Ginners' Cotton Oil Co., 203 Ala. 601, 84 So. 845, 38 Cyc. p. 121, § 3; Louisville, N. A. & C. R. Co. v. Hart, 119 Ind. 273, 21 N. E. 753, 4 L. R. A. 549, 555.

In his work on Parties to Action, Mr. Dicey succinctly states the rules as to plaintiffs as follows: (a) Those having a separate interest and sustain separate damages must sue separately; (b) having a separate interest, but sustain a joint damage, may sue either jointly or separately in respects thereof; (c) having a joint or common interest must sue jointly for the common injury. Such in effect was Brookside-Pratt Min. Co. v. McAllister, 196 Ala. 112, 72 So. 18. In L. N. A. & C. R. Co. v. Hart, 119 Ind. 273, 21 N. E. 753, 4 L. R. A. 549, it is said:

"They remained tenants in common until the tenancy was severed by an actual division made between themselves. Walker v. Fitts, 24 Pick. [Mass.] 191; Thompson v. Mawhinney, 17 Ala. 362 [52 Am. Dec. 176].

"There was no division of the hay by stacks. Each stack was measured and marked so as to leave three-fifths of the stack on one side of the division line and two-fifths on the other, and the three-fifths was designated as the part that was to go to Schultz and the two-fifths as the part that was to go to the other appellees, and it was agreed that either, at his or their convenience, could cut the stacks and take the portion or part designated as going to him or them. No severance of the stacks had taken place when the fire occurred. Until there was an actual severance the common ownership continued. Until then all that can be said of the arrangement is that it was an agreement to sever the tenancy or ownership. Sullivan v. McLenans, 2 Iowa, 437, 65 Am. Dec. 780; McKee v. Garcelon, 60 Me.

165, 11 Am. Rep. 200; Kimberly v. Patchin, 19 N. Y. 330; Channon y. Lusk, 2 Lans. [N. Y.] 215; Sale v. Sun Mut. Ins. Co. [75 Am. Dec. 334], [26 N. Y. Super. Ct. 602] 3 Robt. 607; Clark v. Griffith, 24 N. Y. 597; Brizendine v. Frankfort Bridge Co., 2 B. Mon. [Ky.] 32 [36 Am. Dec. 587]; Baker v. Jewell, 6 Mass. 460 [4 Am. Dec. 162]; Boston & M. R. Co. v. Portland, S. & P. R. Co., 119 Mass. 498 [20 Am. Rep. 338]; Richmond v. Parker, 12 Met. [Metc. (Mass.)] 48; Austin v. Walsh, 2 Mass. 403; Peters v. Davis, 7 Mass. 257; Lacy v. Weaver, 49 Ind. 373 [19 Am. Rep. 683]. * * *

"We were somewhat surprised when we came to look into the authorities to find so little upon the question as to what is necessary as between the tenants to sever a tenancy in common of personal property; but from the investigation which we have made, and the authorities cited, we are brought to the conclusion that there must be a manual separation or division of the common property, and if this is not so in the case under consideration, after the measurement and before the destruction of the property, there were many particles or straws in which the parties were common owners, or else Schultz was the owner of these straws at one end and the other appellees the owners at the other end."

And the rule of separation or severance of common ownership applied in Thompson v. Mawhinney, 17 Ala. 362, 368, 52 Am. Dec. 176, is found in the statement of the unity of possession of tenants in common, being "such as hold by several distinct titles, but by unity of possession, because none knoweth his own severalty, therefore they all occupy promiscuously. 2 Black. Com. 191. And this tenancy exists where there is a unity of possession merely. In the case of Blessing v. House, 3 Gill & J. [Md.] 290, the court said that it was an essential attribute of a tenancy in common that there should be a unity of possession. Unity of possession therefore is the very essence of a tenancy in common, and without it this tenancy cannot exist. * * * To be a tenant in common or a joint tenant, one must have such a title as will authorize him to take and hold possession, and if he can never be entitled to the possession nor to the control of the chattel, we are unable to perceive what legal title he can have. Indeed the right to the possession and enjoyment of property constitutes our title to it at a law, and when we are so situated in reference to it that we can never legally claim possession, our legal title is gone. If then the terms of the contract were such as to exclude Weir altogether from the possession of the cotton—if consistently with the contract he could never be entitled to the possession, he cannot be a tenant in common, for possession or the right to possess is an indispensable requisite of such a tenancy." This test has been applied in Strother's Adm'r v. Butler, 17 Ala. 733; Smyth v. Tankersley, 20 Ala. 212, 56 Am. Dec. 193; Smith v. Rice, 56 Ala. 417; Brown v. Coats, 56 Ala. 439; McGehee's Adm'r v. Peterson, 57 Ala. 333;

Pruitt v. Ellington, 59 Ala. 454; Russell v. Russell, 62 Ala. 48; Ellerson v. State, 69 Ala. 1; Austin v. Bean, 101 Ala. 141, 16 So. 41; Shepard v. M. V. L. Co., 192 Ala. 322, 68 So. 880, 15 A. L. R. 23; Mullins v. Baker, 193 Ala. 594, 69 So. 516; Hood v. Johnston, supra.

[2, 3] The undivided half interest in the two bales of cotton, though respectively claimed as exempt by the owners, would leave them tenants in common, because, just as the hay in L. N. A. & C. R. Co. v. Hart et al., 119 Ind. 273, 21 N. E. 753, 4 L. R. A. 549, had not been actually divided between the joint owners, so the cotton had not been sold and the rights of the tenants in common not separated or severed.

To advert, it is settled by this court that a misjoinder of parties plaintiff may be taken advantage of by demurrer (Giovanni v. Bank, 51 Ala. 176), by motion in arrest of judgment (Giovanni's Case, supra), or by appeal or writ of error, whether the matters appear in the pleading or not. Brookside-Pratt Mining Co. v. McAllister, 196 Ala. 110, 72 So. 18; Giovanni's Case, supra; Bell v. Allen, 53 Ala. 125; Patton v. Crow, 26 Ala. 426. And the question was properly raised and for decision on the instant appeal. Did the separate claims of exemptions interposed by each plaintiff to his interest in the cotton work a severance of their joint or common interest therein? Giovanni's Case, supra. It is insisted for appellants that each plaintiff was entitled to maintain a separate action for damages as to cotton claimed as exempt by him, on the theory that such interest became his separate property when he propounded his claim of exemption thereto, and if any right of the plaintiffs was thereafter invaded by the sheriff, this right was separate as to each plaintiff and not joint; that there was no community of interest in the cotton after the claims of exemptions were interposed. Giovanni v. Bank, 51 Ala. 176.

It is therefore necessary that we give a careful consideration to Giovanni v. First National Bank, supra, a suit by two plaintiffs to recover damages for the illegal sale of certain personal property, alleged to be of less value than ($2,000) on which an attachment was levied by the sheriff, after the plaintiffs had made and filed their separate claims of exemptions. The court below sustained a demurrer to the complaint on the ground of a misjoinder of plaintiffs, and on review of this ruling by the Supreme Court the judgment of the court below was affirmed. Mr. Justice Brickell said of this ruling:

"When there is no community of interest, parties cannot join in an action ex contractu, or ex delicto. A misjoinder of plaintiffs, apparent on the record, is fatal on demurrer, motion in arrest of judgment, or writ of error. 1 Chit. Pl. 66. It is settled by former decisions, that each partner may claim an exemption of property from liability for the payment of debts out of his share of the partnership property. Dunklin v. Kimball, at the last term (50 Ala. 251). If the exemption is claimed, the joint interest in the property exempt is severed, and it becomes the separate property of the partner asserting the exemption. If it remained joint property, it would be subject to legal process against the partnership, for the partnership cannot claim an exemption; that is the personal right of the individual partners. The partnership cannot maintain an action for the taking and sale of property exempt. Each partner can maintain a separate action for the taking and sale of property exempt to him under the law. It is his separate property which is taken, and his individual right which is invaded. A copartner may not join with him in the action, for it is no wrong to him that his separate property is taken, and he can have no interest in the recovery. It is apparent that there is a misjoinder of plaintiffs."

The foregoing case was overruled in Giovanni v. First National Bank, 55 Ala. 305, 28 Am. Rep. 723, in so far as it asserted that individual exemptions could be claimed from partnership property. The court said in 55 Ala. 305, as to this case reported in 51 Ala. 176:

"We are compelled to overrule Howard v. Jones & Starke, 50 Ala. [67] 47; Dunklin v. Kimball [50 Ala.] Id. 251, and Giovanni et al. v. First National Bank, 51 Ala. 177, so far as they assert that individual exemptions can be claimed from partnership property, when taken under process against the partnership, while the partnership continues."

See, also, Schlapback v. Long, 90 Ala. 525, 8 So. 113, as to exemptions out of firm property and against a partnership debt.

[4] It is insisted that the holding of Giovanni v. First National Bank, 51 Ala. 176, except as to the right of partners to claim an exemption in partnership property, is now the law in this state. The effect of the decision of Giovanni's Case on last appeal was to destroy the authority and reason as argument on which the decision on first appeal was based. There was no misjoinder of parties plaintiff in the instant case.

The statutes as to claim and contest of exemptions, in short, are for the filing of a declaration and its record (sections 7890, 7891, Code of 1923); it is taken as prima facie correct and notice of its contents (section 7892, Code of 1923); that property therein embraced shall not be subject to levy, unless indorsed thereon waiver of exemption as to "kind of property on which the levy is sought to be made, or the claim is contested" by "filing with the officer holding the process" the required contest (sections 7894, 7895); and it is provided that the claim of homestead or exemption shall not be lost by "failure, before the levy of process, to file for record a declaration claiming," but that "at any time after levy and

prior to a sale," the same may be filed "with the officer making the levy," notice to be given within three days to plaintiff, etc., of filing of the claim, who may, without giving bond, contest the same in the manner provided by the statute, and officer required to give notice to defendant within three days of contest; that if no contest instituted "within ten days after notice of the claim, the levy shall be discharged, and the property, if personal, be returned to the defendant * * *" (section 7896 of the Code of 1923; Hill v. Hooper, 21 Ala. App. 584, 110 So. 323; Kennedy v. First National Bank of Tuscaloosa, 107 Ala. 170, 18 So. 396, 36 L. R. A. 308).

The suit originated because of the failure of plaintiff Bradley to give bond and take possession of the property as provided in section 7898 of the Code. However, it is provided by section 7897 that:

"When * * * claim of exemption * * * has been instituted, the defendant claiming the exemption may, within five days after service of notice of the contest, deliver to the officer making the levy a bond in double the amount of the value of the property, to be fixed by, and with sureties to be approved by, the officer payable to the plaintiff and conditioned that if the defendant is cast in the contest he will, within thirty days thereafter, deliver the property to such officer, and will pay all costs and damages that may result from its detention, and thereupon the property shall be delivered to the defendant."

Section 7898 of the Code provides as follows:

"If the defendant fails to deliver such bond within the five days allowed him, and the plaintiff shall, within five days thereafter, deliver to the officer a bond in the amount and with the sureties provided in the preceding section, conditioned that if the plaintiff is cast in the contest, he will, within thirty days thereafter, deliver the property to the defendant, and pay all costs and damages that may result from the detention thereof, the property shall be delivered to the plaintiff; but if the plaintiff fails to deliver such bond within the five days allowed, the property must be returned to the defendant without bond."

The statute in respects last indicated comes unchanged from the Code of 1876, § 2836 (section 2049, Code of 1896).

The authority cited by appellees as to the liability of the sheriff under exemptions, claims, etc. (sections 7897, 7898, Code of 1923), is Williams v. Ragan et al., 153 Ala. 397, 406, 407, 45 So. 185, 187, saying:

"The gravamen of this action is the misfeasance of a public officer, a constable, in that he failed or refused to deliver the property to the defendant as commanded, imperatively, by section 2049 of the Code of 1896 [7898 of the Code of 1923]. The failure or refusal to perform this duty was an official dereliction, for which an action lies against the officer and the sureties on his bond. The suit rests on the breached duty, not on the bond, and is, therefore, ex delicto, and not ex contractu. Britt v. Pitts, 111 Ala. 401, 20 So. 484. And no demand for the undelivered property was essential to the maintenance of the action. Elrod v. Hamner, 120 Ala. 469, 24 So. 882, 74 Am. St. Rep. 43. The actionable wrong was complete when the duty imposed by the statute was not performed. It was not and could not be within the province of the officer to decide whether the property or the moiety interest therein was exempt to plaintiff."

Without more it would appear that the trial court was correct in the judgment rendered on the agreed statement of facts.

In Toenes v. Moog, 78 Ala. 558, Mr. Chief Justice Stone explained and limited Sherry v. Brown, 66 Ala. 51, and declared that when an execution from a justice court is levied by a constable on land, in default of personal property, a claim of homestead exemptions may be interposed at any time before an order of sale is granted by the circuit court; too late after an order of sale. Seals v. Pheiffer, 84 Ala. 359, 4 So. 207; Chandler v. Chandler, 87 Ala. 300, 6 So. 153; Randolph v. Little, 62 Ala. 396.

The conflict of authorities was given consideration in Kennedy v. First National Bank of Tuscaloosa, 107 Ala. 170, 186, 192, 18 So. 396, 402 (36 L. R. A. 308), and the conclusion announced "* * * that every accepted text and every adjudged case, received as authority beyond the territorial limits of the court handing it down, supports without equivocation or reserve the proposition that a fraudulent grantor is entitled as against his creditors to homestead in lands he has attempted to convey in fraud of their rights, when and after the conveyance has been avoided and set aside in an action prosecuted by them; and the reasons which underlie the doctrine are so fully and clearly set forth in these texts and adjudications, as brought to view in the foregoing pages, that we are under no necessity to recur to them here." The facts of that case are thus briefly stated:

"The First National Bank of Tuscaloosa, as a judgment creditor of John S. Kennedy, filed a bill against the said John S. Kennedy and his grantees to set aside as fraudulent a conveyance of land by said John S. Kennedy to his correspondents, and to subject said lands to the satisfaction of the judgment. The grantor debtor and his grantees answered the bill, each denying the alleged fraud; the grantor denying that he had or owned any interest in the lands conveyed, and the grantees asserting that they were bona fide holders of the same. On the submission of this cause, on the pleadings and proof, the chancellor decreed that the complainant was not entitled to the relief prayed for. From this decree an appeal was taken to the Supreme Court, and upon the hearing of the cause in this court, the decree of the Chancery Court was reversed, and a decree here rendered granting the relief prayed for, and ordering the conveyance of the lands set aside, and directing that a sale of the same be made

and that the proceeds thereof be paid in satisfaction of the judgment recovered by the First National Bank of Tuscaloosa against John S. Kennedy. After the rendition of this decree by the Supreme Court, John S. Kennedy filed his petition in the chancery court, claiming certain described portions of the lands conveyed in the deed from him to his grantees, as exempt to him as a homestead, and prayed that if a homestead of the value of $2,000 could not be carved out of said property, that $2,000 from the proceeds of the sale of said real estate be paid to him as the value of his homestead exemption. Upon the hearing of this petition, the chancery court decreed that the petitioner was not entitled to a homestead exemption in said property, and ordered that his petition be dismissed. From this decree of the chancellor the petitioner prosecuted an appeal to the Supreme Court."

That decree was reversed and the cause remanded. And on the third appeal, reported in 113 Ala. 279, 283, 21 So. 387, 36 L. R. A. 308, the decision of the majority was again given adherence without further argument or citation of authority. The case of Lackland v. Rogers, 113 Ala. 529, 21 So. 341, rested upon the statute, announced that where land was levied upon in default of personalty a claim of exemption "under statutory provisions having reference" to such proceedings, the claim of exemption should be interposed before the "order for the sale of the land is made by the circuit court." In the second appeal, 117 Ala. 599, 23 So. 489, Mr. Chief Justice Brickell said:

"The question involved relates to a claim of exemption of the homestead in a particular instance only—the levy of an execution issuing on a judgment of a justice of the peace, followed by the grant of an order of sale by the circuit court. The whole procedure informs the defendant that the subjection of the land to the payment of the judgment is the end to be accomplished—and by interposing the claim of exemption he may defeat it. Upon a question of this character, there should not be oscillation of judicial decision."

It will be noted therefore that the foregoing cases and that of Toenes v. Moog, 78 Ala. 558; Sherry v. Brown, 66 Ala. 51, had limited application, under the terms of the statutes providing for the sale of land on the judgment in the justice court, in default of personalty, requiring that the claim of homestead exemption be interposed before the order of sale is made final and conclusive in the circuit court. The authority of Hill v. Hooper, 21 Ala. App. 584, 110 So. 323, is urged by counsel for the appellants as showing error of the circuit court. It is sufficient to say that the Hill Case was not passed upon by this court on certiorari; on the record as set out in the report it appears not to follow the decision in Kennedy v. First National Bank, 107 Ala. 170, 18 So. 396, 36 L. R. A. 308.

In Cross v. Bank of Ensley, 205 Ala. 274, 276, 87 So. 843, the decree on homestead exemption was rendered after the affirmance of the decree ordering the foreclosure of the mortgage; the last bill was in the nature of a rehearing on several questions theretofore settled, set up abrogation, the right of homestead exemption (that had been pointed out as not claimed in the first bill), and the court declared, after examination of the opinion in Kennedy v. First National Bank, supra, that the question of claim of homestead was not too late; that it was settled by that decision; that in a case of this character the claim of homestead exemption may be asserted any time prior to the sale of the property; that a complainant should present his petition for homestead exemption in the cause considered by the court, in which the order of sale was granted, and assert his right thereto. And in Coleman v. Birmingham Fertilizer Co., 208 Ala. 160, 161, 93 So. 904, 905, it is declared that:

"The method by which such right may be asserted in the prior cause suggested in Cross v. Bank of Ensley, supra [203 Ala. 561, 84 So. 267], was, as we have indicated, by 'petition' presented in the cause 'in which the order of sale was granted.' If, however, one entitled to homestead exemption knowingly permit his property to be seized and sold without interposing his claim thereto, he will be held to have waived his right to claim and would not be heard afterwards to complain."

[5-7] It is established by the foregoing that the claim to homestead exemption may be duly interposed at any time before the sale. Kennedy v. First Nat. Bank, 107 Ala. 170, 18 So. 396, 36 L. R. A. 308; Coleman v. Birmingham Fertilizer Co., 208 Ala. 160, 93 So. 904. That the case is not different, as to the claim of other exemptions, is further indicated and emphasized by the provisions of the statute for bonds on contests and from respective parties, and the requirement if plaintiff fails to deliver such bond within the five days allowed, the property must be returned to the defendant without bond. Sections 7897, 7898, Code of 1923. Whatever rights the plaintiff has to the possession, or to keep defendant from the possession of said personal property, he waived or abandoned in his failure to give the bond provided by section 7898 of the Code.

The fact that the judgment nunc pro tunc, creating a lien, operated retrospectively to the date of rendition of the original judgment (Nabers' Adm'r v. Meredith, 67 Ala. 333; 10 A. L. R. 527) does not abrogate the provisions of the statute and the right to claim exemption at any time before sale. Section 7896, Code of 1923. Were it not for the mandatory provisions of the statute and the construction placed upon our exemption laws, it would have been the duty of the sheriff to disregard the claim of exemption and obey the mandate of the judgment nunc pro tunc by a sale of the cotton. However, the de-

fendants having duly claimed exemption before sale and plaintiffs having waived or abandoned their prior right under the statutes as to possession, the sheriff was relieved of his duty to further hold the cotton until he was formally ordered a release of same by, or on adjudication on, the contest of exemption in the Morgan county court. The judgment of condemnation and order of sale in Morgan county court was only conclusive as to parties and issues theretofore presented, not as to the claims and exemptions duly interposed, the contest of the right of exemption not yet determined in that court, the failure of the parties to give bond.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.